## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06-CR-23-TLS |
| | ) | (1:12-CV-302-TLS) |
| MARLYN BARNES | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 570], filed on

September 4, 2012, the Government's Response in Opposition [ECF No. 576], and the

Defendant's Reply to Government's Response [ECF No. 581].

## BACKGROUND

In May 2006, the Government charged Marlyn J. Barnes, along with co-conspirators

Melvin B. Taylor, Vernell A. Brown, Michael D. Alexander, Theodis Armstead, and Herbert

Hightower, with conspiring to possess with intent to distribute more than 5 kilograms of a

mixture or substance containing a detectable amount of cocaine. (Indictment, ECF No. 53.) The

Defendant, along with Taylor and Armstead, were also charged with possessing a firearm in

furtherance of the conspiracy. The charges were the result of an undercover drug sting in which a

federal agent posed as a drug courier willing to help the Defendants rob a large shipment of

cocaine that the undercover agent was supposed to be transporting from Texas to a stash house in

Fort Wayne, Indiana. The six Defendants came together in Fort Wayne to further plan and carry

out the robbery. They intended to bring the cocaine back to Gary, Indiana, and sell it.

On February 7, 2008, a jury convicted the Defendant of conspiring to possess with intent

to distribute more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 when he knowingly and intentionally agreed with others to rob a shipment of cocaine from a stash house. (Verdict, ECF No. 241.) The jury also found the Defendant guilty of carrying a firearm during and in relation to a drug trafficking offense, and possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). (*Id.*) On April 13, 2009, the Court sentenced the Defendant to 292 months of imprisonment for the conspiracy offense and 60 months for the firearm offense. Although the parties initially disputed the quantity of cocaine involved in the offense (with the Government arguing for 40 kilograms and the Defendant for between 5 and 15 kilograms), they arrived at a stipulation before sentencing that the conspiracy involved between 5 and 15 kilograms of cocaine. Based on a review of the evidence introduced at trial, the Court rejected the stipulation, and calculated the advisory Guideline range for the conspiracy on the basis of 40 kilograms of cocaine. To account for the fact that the Court relied on a higher drug amount than what it used to calculate the advisory Guideline range for previously sentenced Codefendants, the Court sentenced the Defendant to the low end of the advisory range.

On April 8, 2010, the Court of Appeals for the Seventh Circuit vacated the sentence and remanded for resentencing. *See United States v. Barnes*, 602 F.3d 790 (7th Cir. 2010) (mandate filed in district court on April 30, 2010). The court remanded because the district court had already accepted factual stipulations for use in sentencing other co-conspirators that set the drug quantity between 5 and 15 kilograms of cocaine. *Id.* at 797 (holding that without justifying the discrepancy in drug amounts, it was clear error to find one drug quantity for other co-conspirators and a different drug quantity for Barnes on an identical record).

2

On January 21, 2011, the Court resentenced the Defendant. In his postremand submission and argument to the Court, the Defendant urged the Court to sentence him based on a quantity of cocaine of 25 grams or less because the conviction stemmed from a reverse sting operation involving fictitious drugs in an amount that was determined by the Government and which he was not capable of obtaining. The Defendant asserted that, if the Court declined to use the 25-gram quantity, the correct amount was between 5 and 15 kilograms, consistent with his Codefendants' sentences and with the jury's verdict. The Defendant also asked that the Court reconsider its application of a four level increase to his base offense level for being an organizer or leader of five or more participants in the commission of an offense on grounds that there were actually two conspiracies, neither of which involved five or more conspirators. He also resubmitted his challenge to the two level increase to his offense level for willful obstruction of justice. Finally, the Defendant maintained that the § 3553(a) sentencing factors justified a sentence at the low end of any guideline range that was based on a quantity of cocaine greater than 25 grams.

Because the jury found that the conspiracy involved at least 5 kilograms, and the evidence in the record supported a considerably greater quantity than 5 kilograms, the Court found, by a preponderance of the evidence, that the drug quantity for sentencing the Defendant was between 5 and 15 kilograms. This was also consistent with the drug quantity the Defendant stipulated to after his trial (Stipulation, ECF No. 446), and was the quantity that some of the other members of the conspiracy stipulated was involved. The Court found that the Defendant's argument for less than 25 grams and his argument that the scale of the sting operation overstated his criminality were not raised before and, even if they were proper to address on remand, had no

merit. The Court rejected the Defendant's argument that the Government, through the reverse sting operation, exercised exclusive control over the amount of drugs involved such that the Defendant's criminality was overstated. The corresponding base offense level for between 5 and 15 kilograms of cocaine was 32. The adjustments for the Defendant's role in the offense (+4) and obstruction of justice (+2) resulted in an offense level of 38, which combined with his criminal history category of I yielded an advisory guideline range of 235 to 293 months of imprisonment on the conspiracy count. The Court, in consideration of the history and characteristics of the Defendant and the circumstances of the offense, determined that a sentence of 292 months on the drug count, was sufficient but not greater than necessary to meet the purposes of punishment set forth in 18 U.S.C. § 3553(a).

The Defendant again challenged his sentence on appeal. The Court of Appeals affirmed the sentence, finding no procedural error and that the sentence imposed was reasonable. *United States v. Barnes*, 660 F.3d 1000 (7th Cir. 2011).

## DISCUSSION

Section 2255 allows a person convicted of a federal crime to seek to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is of jurisdictional or constitutional magnitude, or where there has been an error of law that "constitutes a fundamental defect which results in a complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). A court

4

may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Defendant raises four grounds for relief, all of which relate to the legal representation his lawyers provided at the various stages of his case. As his first ground, the Defendant contends that his trial counsel was ineffective for failing to challenge the Government's use of 21 U.S.C. § 841. He maintains that his offense conduct was actually robbery and should have been charged as a violation of the Hobbs Act, not as a drug offense. In ground two, the Defendant asserts that his counsel provided ineffective assistance when he stipulated to the drug quantity for sentencing and neglected to challenge the sufficiency of the evidence for the drug quantity on appeal. In ground three, the Defendant claims that his appellate counsel should have challenged the sufficiency of the evidence related to the conspiracy as a whole. The Defendant's fourth ground for relief is that his counsel was ineffective during resentencing when he failed to seek a lower sentence under § 3553(a)(6).

**A.     Ground One**

The Defendant believes that rather than being charged with a drug offense, the Government should have charged him with a violation of the Hobbs Act, which prohibits any robbery or extortion or attempt or conspiracy to rob or extort that obstructs, delays or affects commerce or the movement of any article or commodity in commerce. 18 U.S.C. § 1951(a). According to the Defendant, his counsel should have realized that the Government was overreaching by charging him with a drug offense for conduct that involved the planned robbery

of a fictitious stash house, and that the appropriate charges would have exposed him to a less

severe sentence.

To prove ineffective assistance, the defendant must establish that his attorney's

performance fell below an objective standard of reasonableness (the "performance prong") and

that his counsel's deficiencies prejudiced his defense (the "prejudice prong"). *Strickland v.*

*Washington*, 466 U.S. 668, 688–92 (1984). The performance prong requires the defendant to

specifically identify acts or omissions that form the basis of his claim of ineffective assistance.

*Id.* at 690. Based on the totality of the circumstances, the Court must then determine whether the

identified acts and omissions fall outside the range of professionally competent assistance. *Id.* To

meet the second of the *Strickland* prongs—prejudice—the defendant must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694.

The Government charged the Defendant with a violation of 21 U.S.C. § 846. The fact that

the Government could have, in its discretion, charged the Defendant with a different offense

does not establish a violation of his rights. *See United States v. Batchelder*, 442 U.S. 114,

123–24 (1979) (ruling that when "an act violates more than one criminal statute, the Government

may prosecute under either so long as it does not discriminate against any class of defendants").

"Whether to prosecute and what charge to file or bring before a grand jury are decisions that

generally rest in the prosecutor's discretion." *Id.*; *see also Wayte v. United States*, 470 U.S. 598,

607 (1985) ("In our criminal justice system, the Government retains broad discretion as to whom

to prosecute. So long as the prosecutor has probable cause to believe that the accused committed

an offense defined by statute, the decision whether or not to prosecute, and what charge to file or

bring before a grand jury, generally rests entirely in his discretion.") (internal quotation marks,

citations, and brackets omitted). Moreover, "[j]ust as a defendant has no constitutional right to

elect which of two applicable federal statutes shall be the basis of his indictment and prosecution

neither is he entitled to choose the penalty scheme under which he will be sentenced."

*Batchelder*, 442 U.S. at 125.

In light of the discretion afforded to the Government in determining which charges to

indict, counsel's performance did not fall below an objective standard of reasonableness when he

did not challenge the Indictment solely on the basis that another crime could have been charged

instead. "[C]ounsel does not render ineffective assistance by failing to pursue arguments that are

clearly destined to prove unsuccessful, or by strategically choosing to pursue his client's

strongest arguments and to forego marginal ones. *United States v. Lawson*, 947 F.2d 849, 853

(7th Cir. 1991) (citations omitted). The futility of pursuing the Defendant's argument is further

demonstrated by the fact that, at the time the Defendant was indicted, several cases in the legal

system involved a similar factual scenario and were prosecuted under drug statutes. *See United

States v. Hall*, 608 F.3d 340 (7th Cir. 2010) (defendant charged with and convicted of attempted

possession of cocaine with intent to distribute for planning to rob drugs from dealer where the

stash house was a fiction and there were no drugs to steal); *United States v. Lewis*, 2009 WL

3448415 (7th Cir. 2009) (defendants convicted of conspiracy and attempted possession of

cocaine with intent to distribute for planning to rob a cocaine stash house that did not actually

exist); *United States v. Emerson*, 501 F.3d 804 (7th Cir. 2007) (affirming convictions for

conspiracy to possess with intent to distribute more than five kilograms of cocaine after

defendants agreed and planned to carry out an armed robbery of cocaine). Counsel's decision not to challenge the specific statute charged in the Indictment did not fall below an objective standard of professional reasonableness, nor is there a reasonable probability that but for his decision, the results of the proceedings would have been different.

**B.     Grounds Two and Three**

The Defendant makes several arguments related to the drug quantity. He argues that his trial counsel rendered ineffective assistance at sentencing when he stipulated to any drug quantity, and that his appellate counsel provided ineffective assistance when he did not challenge the sufficiency of the evidence to support the jury's finding that the offense involved more than 5 kilograms of cocaine. He also asserts that his appellate counsel should have challenged the sufficiency of the evidence to support his conviction for conspiracy as a whole.

"At sentencing, a district court need only make findings of fact, such as the quantity of drugs attributable to a defendant, by a preponderance of the evidence." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012) (citing *United States v. Krasinski*, 545 F.3d 546, 551 (7th Cir. 2008)). The Court already had ample evidence in the record to determine the drug quantity by a preponderance of evidence, not to mention the jury's determination that the evidence established beyond a reasonable doubt that the Defendant was guilty of conspiring to possess with intent to distribute at least 5 kilograms of cocaine. *See United States v. Bequette*, 309 F.3d 448, 451 (7th Cir. 2002) ("[I]t seems incongruous to suggest that a jury's drug quantity finding, made using only admissible evidence and found beyond a reasonable doubt, is inadequate for sentencing guidelines purposes."). As the Defendant was awaiting sentence, his counsel argued vigorously

8

for using the lowest drug amount that was still consistent with the jury's verdict to determine the Defendant's base offense level. He secured a stipulation with the Government that took the amount of drugs in consideration from 40 kilograms down to between 5 and 15 kilograms, despite the fact that the trial record established that the Defendant planned for and anticipated a greater quantity. There is no merit in the Defendant's position that his counsel provided ineffective assistance when he stipulated to 5 kilograms of cocaine, as the jury has already made this finding and the Court independently confirmed the drug quantity. None of the evidence suggests that, absent the stipulation, the Defendant's sentence would have been based on a lower quantity.

Likewise, there is no merit in the Defendant's position that his counsel on appeal should have challenged the sufficiency of the evidence to support the jury's verdict that the Defendant was guilty of conspiracy or that the quantity of drugs involved was at least 5 kilograms. In making such a challenge, the Defendant would have faced a "nearly insurmountable" burden. *See United States v. Longstreet*, 567 F.3d 911, 918 (7th Cir. 2009). Counsel did not render ineffective assistance when he strategically chose to attack the sentence, and not the conviction. There was sufficient evidence submitted at trial to support the conclusion that the Defendant agreed with others to rob a drug stash house and sell the drugs for money. This was a violation of 21 U.S.C. § 846. *See United States v. Corson*, 579 F.3d 804, 810 (7th Cir. 2009) (emphasizing that even when the crime agreed upon was in fact impossible to commit because the stash house and drugs were fake, the agreement to commit the robbery and sell the drugs is still the crime of conspiracy). The Court of Appeals confirmed as much when considering Codefendant Taylor's insufficiency argument. *See United States v. Taylor*, 600 F.3d 863, 866–69 (7th Cir. 2010)

9

(concluding that the Government "put forth evidence that Taylor actively participated in the conspiracy and even recruited other individuals to the conspiracy"). The same evidence presented at Taylor's trial was considered by a jury in the Defendant's trial. This evidence was even more compelling against the Defendant as he was the one who initially met with the undercover agent to discuss the logistics of the robbery and then contacted others to take part, including Taylor. Contrary to the Defendant's argument, it was not necessary to the formation of an agreement to commit an illegal act that he know details like the exact quantity of drugs, how many people would be guarding the stash, or the layout of the property. These details are not necessary to the finding that the Defendant knowingly and intentionally joined an agreement that had an illegal objective—the possession of illegal drugs for the purpose of distributing them. *See United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008) ("To prove a conspiracy under 21 U.S.C. § 846, the government 'must present substantial evidence that the defendant knew of the illegal objective of the conspiracy and agreed to participate.'" (quoting *United States v. Thornton*, 197 F.3d 241, 254 (7th Cir. 1999))).

There was also ample evidence produced at trial to support the conclusion that the conspirators believed that the amount of cocaine they would be stealing was at least 5 kilograms. Audiotapes of meetings between the Defendant and the undercover agent and confidential informant capture the Defendant making assumptions about the quantity of drugs involved ranging from 20 kilograms to 80 kilograms. For example, after the Defendant had assembled a crew of four others and his brother, he bragged to the confidential informant and the undercover agent that with 20 kilograms, he and his brother could run the city (Gary). Codefendants testified that they understood that the load could be as much as 40 kilograms of cocaine. For example,

10

Codefendant Armstead testified that before going to Fort Wayne, he understood the plan to be a "lifetime deal" involving about 40 kilograms of cocaine. Codefendant Hightower likewise testified that the Defendant told him that the plan was to rob 50 kilograms of cocaine from a stash house in Fort Wayne. The Defendant points to no evidence from which counsel could have argued that the jury's determination lacked a sufficient basis in the evidence. Rather, he notes only that the agent never indicated the exact amount. It makes no difference that the agent did not specify the amount of drugs where it can nevertheless be determined what amount of drugs the Defendant assumed was the subject of the conspiracy. *See United States v. McKenzie*, 656 F.3d 688, 691 (7th Cir. 2011) (noting that all the defendants "were under the impression that a vast quantity of drugs would be discovered at the fictitious stash house"). As the Court determined at the Defendant's resentencing, the evidence admitted at trial supports the conclusion that the Defendant expected that the stash house he was preparing to rob would contain a large load of cocaine that had just arrived from Texas, and that the amount of drugs was enough to make the robbery very lucrative for him and his co-conspirators. Thus, it was reasonably foreseeable to the Defendant that he was planning to rob at least 5 kilograms of cocaine, and there is no basis to vacate his sentence based on his counsel's failure to challenge the jury's findings on appeal.

**C.     Ground Four**

The Defendant believes that his counsel rendered ineffective assistance when he did not seek a departure under 18 U.S.C. § 3553(a)(6) at the Defendant's resentencing. He submits that his counsel should have known that defendants in other districts received sentences of only about

11

20 months for conduct that was identical to his. (Def.'s Mot. 18 (citing *United States v. Raddle*, (E.D. Wis. 2010) (24 months), *United States v. Ware*, (E.D. Wis. 2010) (21 months), *United States v. Wilson*, (E.D. Wis. 2010) (27 months), and *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004) (63 months)).

The Defendant is referring to the statutory provision that requires a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" when determining a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of punishment. 18 U.S.C. § 3553(a)(6). In the Seventh Circuit, subparagraph (a)(6) does not apply when there are disparate sentences among codefendants or co-conspirators, but only "among judges or districts." *United States v. Scott*, 631 F.3d 401, 405 (7th Cir. 2011). Moreover, the disparity must be "unwarranted." 18 U.S.C. § 3553(a)(6).

The *Strickland* standard is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices. Furthermore, there is a strong presumption that counsel's decisions constitute reasonable litigation strategy." *United States v. Scanga*, 225 F.3d 780, 783–84 (7th Cir. 2000) (internal quotation marks and citations omitted). The Defendant has not provided a basis to conclude that counsel's performance fell below objective professional standards when he elected to advance other arguments under § 3553(a), specifically as it related to the Defendant's family circumstances, the nature of the offense, and the Defendant's background, and arranged to have the Defendant's mother testify at his resentencing. The Defendant does not indicate the basis upon which reasonable counsel could have concluded that a sentence within the Guideline range would produce an *unwarranted* disparity with defendants

12

who were found guilty of similar conduct. Although he cites cases from other courts for this Court to compare with his own sentence, he does attempt to identify the nuances of the conduct involved in those cases or the background of the particular defendants. Neither does he address the factors that affected his own sentence, such as his commission of perjury at trial, his role in the offense as a leader and organizer, or his failure to accept responsibility or to cooperate. In fact, a review of those comparator cases reveals that the disparities between sentences was not "unwarranted."

In addition, the Supreme Court counsels that a court necessarily gives significant weight and consideration to the need to avoid unwarranted disparities when it correctly calculates the Guideline range. *See United States v. Gall*, 552 U.S. 38, 54 (2007). The Seventh Circuit has also recognized that "[a] sentence within a properly ascertained range . . . cannot be treated as unreasonable by reference to § 3553(a)(6)" because the "ranges are themselves designed to treat similar offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 907–08 (7th Cir. 2009) (noting that "[s]entencing disparities are at their ebb when the Guidelines are followed"). Although the Defendant is challenging counsel's failure to argue disparity during sentencing, and not as an issue on appeal, he has not shown a reasonable probability that, but for counsel's failure to raise the issue, the result of the proceeding would have been different. The Court considered the statutory criteria in determining the sentence that was sufficient but not greater than necessary to comply with the purposes of punishment when it addressed numerous facts surrounding the seriousness of the Defendant's offense, the need to promote respect for the law, and the Defendant's background. Nothing in the record suggests that advancing a § 3553(a)(6) argument would have changed his sentence.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). Where the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here because no reasonable jurist could find the Court's assessment of the ineffective assistance of counsel claim debatable or wrong.

14

**CONCLUSION**

For the reasons stated above, the Court DENIES the Defendant's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF

No. 570], and DECLINES to issue the Defendant a Certificate of Appealability.

SO ORDERED on October 29, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT